**Rachid DALLALY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0903–CR–279.**

Court of Appeals of Indiana.

Nov. 25, 2009.

Barbara J. Simmons, Oldenburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Rachid Dallaly appeals his convictions for resisting law enforcement as a class A misdemeanor[1] and disorderly conduct as a class B misdemeanor.[2] Dallaly raises two issues, which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm.

The facts most favorable to the convictions follow. On December 5, 2008, Indianapolis Metropolitan Police Officer Eli Raisovich, Jr. was on patrol and observed Dallaly walking southbound along Lafayette Road in Marion County. Officer Raisovich witnessed Dallaly "remove[ ] something white from his mouth and [throw] it into the brush line," and he then turned his car around, pulled up in front of him, activated his emergency equipment, and stopped Dallaly. Transcript at 11. Officer Raisovich asked Dallaly "why he threw something on the ground," and Dallaly stated that he "did not." *Id.* Officer Raisovich told Dallaly that "I did see you remove something from your mouth and throw it on the ground, and [Dallaly again] stated he did not." *Id.* Officer Raisovich then informed Dallaly that he was going to cite him for littering, and he asked Dallaly for his identification. The object Dallaly discarded into the brush line was later determined to be an apple core.

Dallaly informed Officer Raisovich that his identification was in his backpack, and he began to look for it. After Dallaly could not find his identification, "[Dallaly] told [Officer Raisovich] that [Officer Raisovich] could not detain him, that [Dallaly] wasn't going to look anymore because he was cold, his fingers were cold." *Id.* at 12. After Officer Raisovich told Dallaly that he still needed to provide his identification, Dallaly "began to tell [Officer Raisovich] again that [he] couldn't detain [Dallaly], began to get animated, curse, picked up his backpack and started to take a step away from [Officer Raisovich]." *Id.* Officer Raisovich told him to stop, but Dallaly

1. Ind.Code § 35–44–3–3 (Supp.2006).

2. Ind.Code § 35–45–1–3 (Supp.2006).

still proceeded to leave. Dallaly then "turned aggressively toward [Officer Raisovich], [Officer Raisovich] grabbed [Dallaly's] right wrist with his right arm and barred [Dallaly] against [his police car]...." *Id.* When Officer Raisovich reached for Dallaly, he "felt [Dallaly's] stance change dramatically. His demeanor changed." *Id.* at 24.

Officer Jeffrey Mehrlich then showed up on the scene to assist Officer Raisovich. After Officer Raisovich told Dallaly that he was under arrest, Dallaly continued to struggle by "pulling his hands up inside [his clothing] so his hand was very difficult to [handcuff]." *Id.* at 14. Officers Mehrlich and Raisovich were eventually able to gain control of Dallaly's hands and handcuff him, but "[e]ven when handcuffed against the [police car], [Dallaly] would constantly struggle, fight, kick," and "push back on [the officers]." *Id.* These "animated actions" by Dallaly "were such that traffic was beginning to stop in the northbound lanes to see what was going on, and in one instance [Officer Raisovich] had to instruct a car to continue moving." *Id.*

Throughout the arrest, Dallaly was protesting loudly in both English and another language that the officers could not identify. Dallaly screamed "fuck you" and "fuck America" repeatedly, and he "kept reiterating [that the officers] had no reason to detain him...." *Id.* Dallaly also yelled and screamed at every person who pulled up on the scene. Officer Raisovich repeatedly asked Dallaly to stop screaming and settle down because Dallaly's protests were "creating quite a traffic hazard at [that] point." *Id.* at 15. Officer Raisovich described the traffic hazard:

> We had one lane blocked with the squad car southbound, and so we had one open southbound lane, but people were stopping on the northbound lanes parallel to the squad car to see what was going on

and people were having to divert around them and I was also afraid—because we were just under a hill crest I was also afraid that we were going to get rearended.... Dallaly and I and Officer Mehrlich at one point were between two [police cars], so if it had been rearended, it would have been bad for all of us.

*Id.* at 15–16.

Officers Raisovich and Mehrlich began to search Dallaly, and Dallaly would not remain still. While Officer Mehrlich attempted to search Dallaly's pockets, Dallaly "would move away from it, turn his body, continually yell and scream," and was "just totally out of control." *Id.* at 16. Officer Raisovich began to inventory Dallaly's backpack and search it for weapons or other contraband, and he located Dallaly's identification in the bottom of it. Inside the backpack, Officer Raisovich found a Koran, and he handed it to another officer to be inventoried "just to make sure there was no contraband or anything in it...." *Id.* at 17. According to Officer Raisovich, Dallaly objected to the officer handling his Koran, and he again began screaming "fuck you—excuse me—bleep you, bleep you, bleep America, bleep Jesus, and all this." *Id.*

Officer Raisovich then told Dallaly that he was being arrested "for disorderly conduct, resisting arrest, and receiving a citation." *Id.* at 16–17. Dallaly became incensed again and screamed. Dallaly also addressed a supervising officer who had arrived on the scene, yelling "f-you, f-America, f-Jesus...." *Id.* at 17.

The State charged Dallaly with resisting law enforcement as a class A misdemeanor and disorderly conduct as a class B misdemeanor. Following a bench trial, Dallaly was found guilty as charged. The trial court sentenced Dallaly to ten days execut-

ed in the Marion County Jail with three days credit.

■ The sole issue is whether the evidence is sufficient to sustain Dallaly's convictions. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* We handle each of Dallaly's convictions in turn.

### A. *Resisting Law Enforcement*

■ First, Dallaly challenges whether the evidence was sufficient to convict him of resisting law enforcement as a class A misdemeanor. The offense of resisting law enforcement is governed by Ind.Code § 35-44-3-3, which provides in relevant part that "[a] person who knowingly or intentionally ... forcibly resists, obstructs, or interferes with a law enforcement officer ... while the officer is lawfully engaged in the execution of the officer's duties ... commits resisting law enforcement, a Class A misdemeanor ...." Thus, to convict Dallaly of resisting law enforcement as a class A misdemeanor, the State needed to prove that Dallaly: (1) knowingly or intentionally; (2) forcibly resisted, obstructed, or interfered; (3) with Officer Raisovich while he was lawfully

engaged in the execution of his duties as an officer. Ind.Code § 35-44-3-3(a)(1). Dallaly argues that he "did not use any strong, powerful or violent force toward law enforcement. Accordingly, the evidence did not support the charge of forcibly resisting law enforcement beyond a reasonable doubt...." Appellant's Brief at 5.

The Indiana Supreme Court recently examined what constitutes forcible resistance under the statute for resisting law enforcement in *Graham v. State*, 903 N.E.2d 963 (Ind.2009). In *Graham*, the defendant refused to present his arms to be handcuffed. 903 N.E.2d at 965. The Court, relying on *Spangler v. State*, 607 N.E.2d 720 (Ind.1993), noted that "the word 'forcibly' modifies 'resists, obstructs, or interferes' and that force is an element of the offense." *Id.* However, *Graham* continues that "[t]he force involved need not rise to the level of mayhem." *Id.* The Court stated:

> In *Johnson v. State*, 833 N.E.2d 516, 517 (Ind.Ct.App.2005), a defendant in custody "pushed away with his shoulders while cursing and yelling" while the officer attempted to search him. As officers attempted to put him into a police vehicle, Johnson "stiffened up" and the police had to get physical in order to put him inside. *Id.* The Court of Appeals correctly held that Johnson's actions constituted forcible resistance.

*Id.* at 965–966. The Court held that "[w]hile even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice," the defendant's mere failure to present his arms for cuffing did not constitute forcible resistance. *Id.* at 966.

Here, the evidence demonstrated that Dallaly "turned aggressively" toward Officer Raisovich after Dallaly was told that he was not free to leave. Transcript at 12.

Dallaly struggled with Officers Raisovich and Mehrlich by "pulling his hands up inside [his clothing] so his hand was very difficult to [handcuff]." *Id.* at 14. Officers Mehrlich and Raisovich were eventually able to gain control of Dallaly's hands and handcuff him, but even when handcuffed against the police car, Dallaly constantly struggled, fought, kicked, and pushed back on the officers.

Based on our review of the record, we conclude that evidence of probative value exists from which the trial court could reasonably have found beyond a reasonable doubt that Dallaly committed resisting law enforcement as a class A misdemeanor. *See, e.g., Johnson v. State,* 833 N.E.2d 516, 517, 519 (Ind.Ct.App.2005) (holding that the evidence was sufficient to convict defendant of resisting law enforcement where defendant "turned away and pushed away with his shoulders while cursing and yelling" and then defendant "stiffened up" when the officers attempted to place him into the police vehicle).

### B. *Disorderly Conduct*

Second, Dallaly challenges whether the evidence is sufficient to sustain his conviction for disorderly conduct, with particular emphasis on whether his speech constituted free speech under the Indiana Constitution. The offense of disorderly conduct is governed by Ind.Code § 35–45–1–3, which provides in relevant part that:

(a) A person who recklessly, knowingly, or intentionally:

    (1) engages in fighting or in tumultuous conduct;

    (2) makes unreasonable noise and continues to do so after being asked to stop; or

    (3) disrupts a lawful assembly of persons;

commits disorderly conduct, a Class B misdemeanor.

The constitutionality of the disorderly conduct statute is determined on an as applied basis under Article 1, section 9 of the Indiana Constitution. Article 1, section 9 provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." Dallaly was charged under Ind.Code § 35–45–1–3(a)(1)–(2) of the disorderly conduct statute, and he does not challenge the sufficiency of the evidence to convict him under the statute itself. Rather, Dallaly argues that:

> Mr. Dallaly's criticism of the officers' action was political speech protected by Article 1, section 9 of the Indiana Constitution. He was protesting the officer's actions in stopping him for throwing an apple core to the ground and arresting him when he could not locate his identification. He contends his comments were not ambiguous and were clearly directed at the police legality and appropriateness of the police action.

Appellant's Brief at 5.

■■ In reviewing the constitutionality of Ind.Code § 35–45–1–3 as applied to a defendant, we employ a two-step analysis. "First, we must determine whether state action has restricted a claimant's expressive activity; second, if it has, we must decide whether the restricted activity constituted an 'abuse' of the right to speak." *Blackman v. State,* 868 N.E.2d 579, 584–585 (Ind.Ct.App.2007) (citing *Whittington v. State,* 669 N.E.2d 1363, 1367 (Ind.1996)), *trans. denied.* Where a state action restricts a defendant's expressive activity, only if the State correctly determines that a defendant has abused his right to speak may the statute be constitutionally applied.

"The first prong of this inquiry may be satisfied by a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation." *Shoultz v. State,* 735 N.E.2d 818, 825 (Ind.Ct.App.2000), *trans. denied.* Here, the record reveals that Dallaly was arrested for disorderly conduct after he screamed and swore at the officers. Dallaly has established that the State restricted his expressive activity. *See Johnson v. State,* 719 N.E.2d 445, 449 (Ind.Ct.App.1999) (holding that a person's conviction for making unreasonable noise based on loud speaking during a police investigation constitutes state action restricting defendant's expressive activity).

Most cases turn on the second prong of the analysis. The Indiana Supreme Court recently reiterated "that the right of free speech protected in Section 9 is expressly qualified by the phrase 'but for the abuse of that right, every person shall be responsible.'" *J.D. v. State,* 859 N.E.2d 341, 344 (Ind.2007). In order to satisfy the second prong of the test, a defendant "must prove that 'the State could not reasonably conclude that the restricted expression was an "abuse" of [his] right to speak, and therefore, the State could not properly proscribe the conduct, pursuant to its police power, via the disorderly conduct statute.'" *Blackman,* 868 N.E.2d at 585 (quoting *Johnson,* 719 N.E.2d at 449). Generally, whether the State correctly determined that a defendant's expression constituted an abuse of the right to free speech is subjected to rationality review. *Id.* However, if the defendant demonstrates that the expressive activity precipitating the disorderly conduct conviction was political in nature, then the burden shifts to the State to demonstrate that it did not materially burden the claimant's opportunity to engage in political expression. *Id.; see also* *Anderson v. State,* 881 N.E.2d 86, 90 (Ind. Ct.App.2008). If the speech is determined to be ambiguous, "then the expression is not political, and we review the State's restriction of the expression under standard rational review." *Anderson,* 881 N.E.2d at 90.

"Expressive activity is political if its aim is to comment on government action, including criticism of an official acting under color of law." *Blackman,* 868 N.E.2d at 585. Where the expressive activity focuses on a private party's conduct, including the conduct of the speaker himself, the expression is not political. *Id.* The nature of the expression is reviewed under an objective standard. *Id.* In instances where some of a defendant's expressive activity is deemed political is coupled with other comments found not to be political expression, the "dual nature" of this expression may lead to the conclusion that the expression was ambiguous. *Id.* at 585–586.

Here, the evidence reveals that Officer Raisovich asked Dallaly for his identification so that he could cite Dallaly for littering. After Dallaly could not locate his identification, Officer Raisovich told him that he still needed to provide identification. Dallaly told Officer Raisovich that he could not detain him, and Dallaly subsequently "began to get animated, curse, picked up his backpack and started to take a step away from [Officer Raisovich]." Transcript at 12. Then, after Officer Raisovich told Dallaly that he was under arrest, Dallaly protested loudly in English and another language. Dallaly screamed "fuck you" and "fuck America" repeatedly, and he "kept reiterating [that the officers] had no reason to detain him...." *Id.* at 14. Dallaly also yelled and screamed at every person who pulled up on the scene. Officer Raisovich repeatedly asked Dallaly to stop screaming

and settle down. While Officer Mehrlich attempted to search Dallaly's pockets, Dallaly continually yelled and screamed and was "just totally out of control." *Id.* at 16. After Officer Raisovich started handling Dallaly's copy of the Koran, Dallaly screamed, according to Officer Raisovich: "fuck you—excuse me—bleep you, bleep you, bleep America, bleep Jesus, and all this." *Id.* at 17. Dallaly explained at trial that "I told [Officer Raisovich], you know, he should not touch the Koran in the first place and he say [sic] I'm not doing nothing ... I perceive it, you know, he insulted my religion, so I spoke back [sic] his religion, 'f' [3] Jesus." *Id.* at 48. After Dallaly was informed that he was being arrested for disorderly conduct and resisting law enforcement, he became incensed again and screamed. Dallaly also addressed a supervising officer who had arrived on the scene, yelling "f-you, f-America, f-Jesus...." *Id.* at 17.

Based on this record, we conclude that the aim or focus of Dallaly's initial expressive activity was to criticize the actions of the police officers while effecting Dallaly's arrest and was therefore political expression. Unlike other recent disorderly conduct cases handed down by this court, nothing in the record demonstrates that Dallaly's initial comments focused on any topic other than the state action which was being taken against him. *C.f. Martin v. State,* 908 N.E.2d 285, 288 (Ind.Ct.App. 2009) (holding that defendant's "tirade ... was rooted in the fact that he had violated a rule of the work release facility and, therefore, was being detained while there was a delay in obtaining a warrant for his arrest for that violation"); *Anderson,* 881 N.E.2d at 90 (holding that because the police were "only" doing what the company

who called the police wanted done, removing the defendant from the premises, the defendant's comments were "[i]n essence" ... about the company's decision to make him leave and not so much about the officers' conduct and thus was asserting a right to be where he was, which is a comment on his own behavior); *Blackman,* 868 N.E.2d at 586 (holding that defendant's comments were of a "dual nature" and thus ambiguous because the "comment that 'she had every right to be there, that she did not have to leave the scene,' constituted expression focused on the conduct of a private party ...").

■ Thus, the burden shifted to the State to demonstrate that it did not materially burden Dallaly's opportunity to engage in political expression. In demonstrating that the State did not "materially burden the [defendant's] opportunity to engage in political expression[,] '[t]he State can do so by producing evidence that the expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests.'" *Id.* at 585 (quoting *U.M. v. State,* 827 N.E.2d 1190, 1192 (Ind.Ct.App.2005)) (citation omitted). "When the expressions of one person cause harm to another in a way consistent with common law tort, an abuse under § 9 has occurred." *Madden v. State,* 786 N.E.2d 1152, 1157 (Ind.Ct.App.2003), *trans. denied.* "In order to demonstrate such particularized harm, the State must show that the expression caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. Evidence of mere annoyance or inconvenience is not sufficient." *Blackman,* 868 N.E.2d at 585 (citation omitted).

---

**3.** Dallaly later testified that he actually used the word "fuck," not "f," just as Officer Raisovich testified. Transcript at 48.

In *J.D. v. State,* the Indiana Supreme Court distinguished the seminal case establishing the constitutional protection for political expression, *Price v. State,* 622 N.E.2d 954 (Ind.1993). 859 N.E.2d at 344. The *J.D.* Court stated that the defendant in *Price* did not abuse her right to speak because:

> [H]er noisy protest about the police officer's conduct toward another person constituted political speech, [ ] any harm suffered by others did not rise "above the level of a fleeting annoyance," and [ ], given the large number of officers and civilians assembled and the level of the commotion before Price's arrival, "the link between her expression and any harm that was suffered" was not established.

*Id.* (quoting *Price,* 622 N.E.2d at 964). The Court held that J.D.'s case was distinguishable because J.D.'s speech, consisting of persistent loud yelling, obstructed or interfered with the police by obscuring the officer's "attempts to speak and function as a law enforcement officer." *Id.* Because the speech obstructed and interfered with the police officer and was therefore not "relatively harmless," J.D.'s otherwise political speech "clearly amounted to an abuse of the right to free speech and thus subjected her to accountability under Section 9." *Id.*

Here, we find that the bulk of Dallaly's speech was similar to the speech found to be an abuse of the right to free speech in *J.D.* Dallaly persisted in yelling loudly during the stop made by Officer Raisovich. This loud yelling obstructed and interfered with Officer Raisovich's ability to function as a law enforcement officer, and it necessitated Officer Raisovich calling for backup. Dallaly's protests also created a traffic hazard. This was different from the facts of *Price,* where there was already a "large number of officers and civilians assembled and a high level of commotion before Price's arrival," and thus " 'the link between her expression and any harm that was suffered' was not established." *Id.* (quoting *Price,* 622 N.E.2d at 964). Even though Dallaly's speech was political, the disturbance he created was more than a mere fleeting annoyance and interfered with the duties of the police officers at the scene. Sufficient evidence exists establishing that Dallaly abused his free speech rights under Article 1, section 9 of the Indiana Constitution. *See Martin,* 908 N.E.2d at 288–289 (holding that even if defendant's speech was found to be political, defendant abused his free speech rights by creating "more than a mere fleeting annoyance"); *Madden,* 786 N.E.2d at 1157 (holding that defendant's conduct "created a harm that [rose] above the level of a fleeting annoyance," causing "particularized harm").

For the foregoing reasons, we affirm Dallaly's convictions for resisting law enforcement as a class A misdemeanor and disorderly conduct as a class B misdemeanor.

Affirmed.

CRONE, J., and MAY, J., concur.