William LONG, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A04–0912–CR–743.

Court of Appeals of Indiana.

Sept. 30, 2010.

Transfer Denied Dec. 22, 2010.

---

David Hooper, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

William Long appeals his conviction for Theft, as a Class D felony, following a bench trial. He presents a single issue for our review, namely, whether the State presented sufficient evidence to support his conviction.

We affirm.[1]

### FACTS AND PROCEDURAL HISTORY

Frank Wright manages a family trust created after his father died. The trust owns a condominium ("the condo") in Johnson County, and in January 2008, Wright placed an advertisement in the Indianapolis Star in an effort to sell or lease the condo. Long saw the ad and contacted Wright about leasing the condo. Wright ultimately convinced Long to enter into a lease-to-purchase contract, which provided for no down payment and monthly payments of $773.02. Long had stated to Wright that "he was having trouble and he

---

1. We heard oral argument in this case on August 31, 2010.

was having some money transferred in from somewhere out of state. I think New Jersey." Transcript at 7. The condo was furnished—Wright had not removed any items from the house since his father's death—but the written contract did not include any provision for the personal property in the condo. Wright intended for Long to purchase the condo furnished, but he also intended to remove some of his father's personal items after Long moved in.

Long moved in to the condo in late January, but Long and Wright did not execute the contract until February 29. Long and Wright had a "very cordial" relationship and had telephone conversations "almost daily" from late January until mid-March. *Id.* at 8. But when Long did not make his first payment, which was due on March 18, Long "started to get nasty" and threatened unspecified legal action against Wright. *Id.* Wright attempted to contact Long on a daily basis for awhile thereafter, both by telephone and in person, but Long did not answer either the phone or the front door. Wright still had a key to the condo, but Long kept the glass storm door locked, which prevented Wright's entry.

On April 17, Long moved out of the condo, taking all of the personal property, including appliances, with him. Wright only learned of the move after a neighbor called to inform him. Long had not communicated with Wright or given any explanation for the sudden move. When Wright arrived at the condo that day, he found it empty. Wright filed and won a civil action against Long.

The State charged Long with theft, as a Class D felony, alleging that he stole "miscellaneous items" belonging to Wright.[2] Appellant's App. at 69. At the conclusion

of a bench trial, the trial court took the matter under advisement. The trial court subsequently explained its reasons for finding Long guilty as follows:

> The Court has had this under advisement since the evidentiary presentation. And I did so ... I don't often do that. If I'm completely honest with you, I probably can count on one hand the number of times I've done that in my twenty some years on the bench. And the reason I did is because it's an interesting evidentiary circumstance. There is no question that you purchased from the vendor, by way of the contract, real estate together with all improvements. So, my analysis began, first of all, with the concept as to whether or not there was evidence demonstrated by the State of Indiana that any portion of the property that you moved from the residence was not encompassed within the contract. My conclusion is is [sic] that it was not. Everything was within the contract. And it ultimately was amplified by the contract language itself reflecting that full and complete possession of the real estate and I believe the furnishings were contemplated as a portion of that contract. The next issue was whether or not there was any unauthorized control. Certainly you had possession of it rightfully. The question becomes once you start aspiration [sic] or movement of that from one location to another at a time in which you've already indicated a desire not to pay anything toward the contract, whether or not that then becomes criminal in nature versus simply a default under the contract that is merely a civil remedy. I have criticized both in court and out of court, in classrooms throughout Indiana,

2. Police found two appliances that had been taken from the condo at Long's mother's

house, and Long's sister ultimately paid Wright for those items.

prosecuting entities that utilize, if you will, criminal charges to resolve a civil dispute. I think there is a problem with that and one that I routinely recognize. This case comes dangerously close to that at times, but *ultimately I believe that the evidence and the inferences that reasonably arise therefrom demonstrate that, in fact, you did exert unauthorized control over the property. There is certainly evidence in this case that is supported by your conduct after the execution of the contract that you did not intend to pay for it and never intended to pay for it.* And based upon that I'm going to find you then guilty of the crime as charged, the theft, as a Class D felony.

*Id.* at 30–32 (emphasis added). The trial court entered judgment and sentence accordingly. This appeal ensued.

### DISCUSSION AND DECISION

■ Long contends that the State presented insufficient evidence to support his conviction. When reviewing the claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

To prove theft, as charged, the State was required to prove that Long knowingly or intentionally exerted unauthorized control over Wright's property, namely, miscellaneous items, with the intent to deprive Wright of any part of the use or value of the property. *See* Ind.Code § 35–43–4–2(a). On appeal, Long challenges the sufficiency of the evidence on the element of "unauthorized control." Long maintains that he was authorized to control the personal property in the condo pursuant to the terms of his contract with Wright. The State contends, and the trial court found, that Long never intended to make any payments on the contract and that evidence supports his conviction.

■ Indiana Code Section 35–43–4–1(b)(6) provides that a person's control over property of another person is "unauthorized" if it is exerted by promising performance that the person knows will not be performed. The key to the offense of theft by promising performance that the person knows will not be performed is the intent of the person when he secures control of the property. *Kollar v. State*, 556 N.E.2d 936, 939 (Ind.Ct.App.1990), *trans. denied.* "Intent" is "a mental function, and without a confession, it must be determined from a consideration of the conduct and the natural consequences of the conduct giving rise to the charge that the defendant committed theft." *Duren v. State*, 720 N.E.2d 1198, 1202 (Ind.Ct.App. 1999) (quoting *Brant v. State*, 535 N.E.2d 189, 191 (Ind.Ct.App.1989), *trans. denied*), *trans. denied.* Accordingly, intent may be proven by circumstantial evidence, and it may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Duren*, 720 N.E.2d at 1201.

■ The legislature did not intend to criminalize bona fide contract disputes. *Jamrosz v. Resource Benefits, Inc.*, 839 N.E.2d 746, 759 (Ind.Ct.App.2005), *trans. denied.* But where, as here, the evidence supports a reasonable inference that at the inception of a contract, a party has no intention of honoring the contract, even in part, a criminal conviction may stand. The State presented evidence that Long told Wright that he had no money, but that "he

was having some money transferred in from somewhere out of state." Transcript at 7. Wright agreed to let Long move into the condo without a down payment, and Long lived there for approximately two and a half months before the first payment came due. In the meantime, Long maintained a "very cordial" relationship with Wright, keeping "almost daily" contact with him. *Id.* at 8. Then, when the first payment became due, Long did not pay, and when Wright asked him about it, Long threatened legal action against Wright for no apparent reason and cut off all communication with him. Finally, Long moved out of the house, taking everything, including appliances, without any warning or explanation to Wright. The trial court considered that evidence and found that Long's conduct supported a reasonable inference that Long had never intended to pay Wright. Long did not testify, and there is only circumstantial evidence of his intent in the record based upon a consideration of his conduct. A conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt. *See Brink v. State,* 837 N.E.2d 192, 194 (Ind.Ct.App.2005), *trans. denied.*

This is a close case, and we have the same concern as that expressed by the trial court about the propriety of a criminal prosecution in what is primarily a contractual dispute between the parties. But we cannot say that the trial court got it wrong in this instance, especially given that Long made absolutely no payments to Wright on the contract and threatened to sue Wright without any apparent justification. The State presented substantial evidence of probative value that Long never intended to pay Wright. Indeed, all of the evidence in the record, considered as a whole, supports the conclusion reached by the trial court that Long exercised unauthorized control over the property.

The sole issue is whether the evidence is sufficient to sustain Long's conviction. The dissent considers other possible inferences that can be drawn from the evidence and concludes that when the evidence is weighed, there is a "tie" between the evidence for and the evidence against conviction. But, again, when reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction. *See Dallaly v. State,* 916 N.E.2d 945, 950 (Ind.Ct. App.2009). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.*

Finally, Long contends that the property did not belong to Wright because ownership of the property was conveyed to Long when the contract was executed. Thus, Long reasons, he was in lawful possession of the personal property at all relevant times. But, again, the trial court found that Long never intended to make any contract payments to Wright, and, hence, that Long never acquired a proprietary interest in the property. We hold that the evidence is sufficient to support Long's conviction for theft.

Affirmed.

MATHIAS, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent. While I fully agree with the statement of the law set forth in the majority opinion, I apply that law to reach a decision contrary to my colleagues.

Like my colleagues and the respected and experienced trial court judge who heard this case, I struggle with the facts presented and even more with the implication that our decision may hold for other cases. At the one extreme, we do not want to condone the taking of property by fraudulent promises and representations. At the other, we do not want to criminalize the inability of a debtor to make payments contracted for in good faith.

To constitute theft on the facts presented here, there must be fraud in the inception; i.e., Long entered into this transaction with the intention that he was not going to pay for the property conveyed. There is no direct evidence of such an intention, and to sustain the conviction, there must be circumstantial evidence supporting such an intention beyond a reasonable doubt. My colleagues point to the following evidence as providing such support: First, the fact that Long told Wright that he had no money, but that "he was having some money transferred in from somewhere out of state." *Tr.* at 7. Second, the fact that Long's "very cordial" relationship with Wright changed when he did not make the first payment due under the contract. Third, the fact that Long removed the personal property when he vacated the premises without warning or explanation.

The trial court found, and my colleagues agree, that this evidence supported a reasonable inference that Long never intended to pay Wright. While I believe that these facts are established and are not inconsistent with an intention on the part of Long that he would not pay for the property, I do not think that they give rise to an inference of such an intention.

We discussed permissible evidentiary inferences in *Lewis v. State*, 535 N.E.2d 556 (Ind.Ct.App.1989), saying:

> An inference is a process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts already proved or admitted.... When an inference reasonably can be drawn from the evidence, such inference constitutes relevant evidence to be considered by the factfinder.... However, a factfinder's determination cannot stand if it is based upon mere speculation or conjecture or on an inference on another inference.

*Id.* at 559 (Citations omitted.)

First, there is Long's statement that he had no money, but was having some money transferred in from out of state. This statement supports the inference of intention necessary to support the conviction only if it is shown to be false. Were it shown to be true, it would support a contrary inference; namely, that Long intended to pay Wright when he received the money from out of state. Here, we have no evidence which establishes either the truth or falsity of Long's statement. In the absence of such evidence, I believe it is error to draw any inference of Long's intent from it.

Second, we have the change in Long's relationship with Wright from very cordial to hostile. To me, it is conjecture to infer that the reason underlying the change was an intention not to pay for the property. People facing financial difficulties also face emotional challenges and oftentimes do not behave well. This is particularly true *vis à vis* their creditors. Thus, while an intention not to pay may give rise to such a change in attitude, I believe that such a

change could also come about as a result of embarrassment, shame, or frustration. I do not believe it permissible to draw an evidentiary inference where a contrary inference is equally likely.

Finally, there is the fact that Long took the personal property when he vacated the real estate without notice to Wright. To me, Long's action in mid-April says nothing about his intention in mid-February. As before, this evidentiary fact may be consistent with intention on Long's part not to pay for the goods, but is equally consistent with the conclusion that Wright had intended to pay for the goods when he signed the contract and vacated the premises when he learned that he would not be able to pay as agreed for the real estate, taking only the tangible personal property that had become his property at closing when Wright failed to retain a purchase money security interest in the goods.

In baseball, ties go to the runner; in criminal procedure, they go to the defendant. I would reverse Long's conviction.