## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 18 2015, 6:03 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kimmerly A. Klee
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Adrienne Tyler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 18, 2015

Court of Appeals Case No.
49A02-1411-CR-807

Appeal from the Marion Superior Court
The Honorable Jose Salinas, Judge

The Honorable Shatrese Flowers, Commissioner

Trial Court Cause Number 49G14-1305-FD-35608

**Bradford, Judge.**

# Case Summary

[1] During the late-evening or early-morning hours of May 30 and 31, 2013, Appellant-Defendant Adrienne Tyler became involved in an altercation with police after a passenger in her vehicle observed the passenger's vehicle abandoned and damaged on the side of the road. During the altercation, Tyler yelled obscenities directed toward the officers, pushed an officer and slapped him on the face. She then continued to struggle with the officer after he attempted to place her under arrest.

[2] Tyler was subsequently charged with Class D felony possession of a controlled substance, Class D felony battery on an officer, Class D felony resisting law enforcement, and Class B misdemeanor disorderly conduct. She pled guilty to the Class D felony possession of a controlled substance charge. A jury found her guilty of the remaining charges. Tyler was sentenced to an aggregate 365-day sentence, with two days executed and the remainder suspended to probation.

[3] On appeal, Tyler challenges the sufficiency of the evidence to sustain her conviction for Class B misdemeanor disorderly conduct. She also contends that the trial court erred in instructing the jury with respect to that charge. Concluding that the evidence is sufficient to sustain Tyler's conviction and that the claimed error in instructing the jury was harmless, we affirm.

# Facts and Procedural History

During the late-evening or early-morning hours of May 30 and 31, 2013, Lashanda Brownie, her cousin, and Tyler were "hanging out." Tr. p. 224. At some point, Brownie loaned her cousin her vehicle so that he could go and purchase some drinks and cigarettes for the group. Brownie's cousin never returned.

At approximately 1:00 or 1:30 a.m. on May 31, 2013, Indianapolis Metropolitan Police Officer Alan Leinberger was driving his fully marked police cruiser northbound near 9th and Wallace Streets. While driving, Officer Leinberger observed a southbound vehicle that appeared to have a flat right passenger side tire, which looked as if it were about to fall off of the rim. Officer Leinberger also noticed that the vehicle appeared to have sustained some front end damage. Officer Leinberger turned around, initiated his overhead lights and siren, and attempted to stop the vehicle in order to find out what happened. The driver of the vehicle did not stop, but rather turned northbound on Wallace Street.

When the vehicle didn't stop, Officer Leinberger requested backup. Lieutenant Thomas Black and Officers Beniam Kumbi and Joel Anderson responded to Officer Leinberger's call for assistance. Officer Leinberger soon thereafter found the vehicle abandoned and parked along the side of Wallace Street. Officer Leinberger observed that the vehicle looked as though it had been involved in an accident. Because the vehicle was abandoned and parked in the line of traffic, Officer Leinberger intended to tow the vehicle.

[7]     When her cousin failed to return, Brownie eventually asked Tyler to take her home.  While on their way to Brownie's residence, Brownie noticed her damaged vehicle abandoned and parked on the side of the road.  Brownie approached the officers and asked "What's going on?  That's my car."  Tr. pp. 98-99.

[8]     After Brownie approached the officers, Officer Leinberger asked Brownie for identification in order to verify that she was indeed the owner of the vehicle.  Brownie and Officer Leinberger walked back to the SUV that was being driven by Tyler and in which Brownie had been a passenger.  As Brownie and Officer Leinberger continued their conversation and approached the SUV, Tyler started "getting loud," yelling "Don't tell nothing.  We know what's going on here.  This is bullshit.  Don't say a f[******] word."  Tr. pp. 103-04.

[9]     Officer Leinberger instructed Tyler to "keep [her] voice down" telling her "[w]e don't need to yell."  Tr. p. 104.  Tyler ignored this instruction and kept yelling things to the effect of "We don't need to say anything.  Don't say anything to them.  Don't give them shit.  We know what's going on."  Tr. p. 104.  Tyler continued to yell even after both Lieutenant Black and Officer Kumbi repeated Officer Leinberger's prior instruction to stop.  In all, Tyler was instructed to stop yelling at least four or five times.  She did not comply with any of these instructions.

[10]    Tyler eventually became involved in a physical altercation with Lieutenant Black, putting her hands on his chest and attempting to push him away.  Tyler

also slapped Lieutenant Black in the face. Lieutenant Black indicated that he did not want to arrest Tyler, but felt he had no choice after she slapped him. Lieutenant Black then notified Tyler that she was under arrest. Tyler continued to struggle, "flailing her body and her arms." Tr. p. 155. Tyler "kept moving around and pulling her arms and twisting her body" in an attempt to pull away from Lieutenant Black and Officer Kumbi. Tr. p. 199.

[11]   As a result of Tyler's actions, Brownie's focus shifted away from Officer Leinberger to Tyler. Brownie then became "very animated" and attempted to move towards the commotion that was being created by Tyler. Tr. p. 112. Although distracted by Tyler's actions, Brownie eventually complied with Officer Leinberger's instructions to "[j]ust stand still" and to "stay with [him]." Tr. p. 113.

[12]   On May 31, 2013, Appellee-Plaintiff the State of Indiana (the "State") charged Tyler with Class D felony possession of a controlled substance, Class D felony battery on an officer, Class D felony resisting law enforcement, and Class B misdemeanor disorderly conduct. Prior to the commencement of Tyler's jury trial, which was held on September 22, 2014, Tyler pled guilty to the Class D felony possession of a controlled substance charge. Following the conclusion of the evidence, the jury found Tyler guilty of the remaining charges. On October 27, 2014, the trial court conducting a sentencing hearing during which it merged the Class D felony battery on an officer charge with the Class D felony resisting law enforcement charge. The trial court sentenced Tyler pursuant to

alternate misdemeanor sentencing to an aggregate 365-day sentence, with two days executed and the remainder suspended to probation. This appeal follows.

# Discussion and Decision

On appeal, Tyler contends that the evidence is insufficient to sustain her conviction for Class B misdemeanor disorderly conduct. Tyler also contends that the trial court abused its discretion in instructing the jury. We will address each contention in turn.

# I. Sufficiency of the Evidence

The offense of disorderly conduct is governed by Indiana Code section 35-45-1-3, which provides in relevant part that: "(a) A person who recklessly, knowingly, or intentionally … (2) makes unreasonable noise and continues to do so after being asked to stop … commits disorderly conduct, a Class B misdemeanor." "The constitutionality of the disorderly conduct statute is determined on an as applied basis under Article 1, section 9 of the Indiana Constitution [("Article 1, section 9")]." *Dallaly v. State*, 916 N.E.2d 945, 951 (Ind. Ct. App. 2009). Article 1, section 9 provides that: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.

In arguing that the evidence is insufficient to sustain her conviction for Class B misdemeanor disorderly conduct, Tyler argues that the speech at issue constituted protected free speech under the Indiana Constitution.

> In reviewing the constitutionality of [Indiana Code section] 35-45-1-3 as applied to a defendant, we employ a two-step analysis. "First, we must determine whether state action has restricted a claimant's expressive activity; second, if it has, we must decide whether the restricted activity constituted an 'abuse' of the right to speak." *Blackman v. State*, 868 N.E.2d 579, 584-585 (Ind. Ct. App. 2007) (citing *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996)), *trans. denied*. Where a state action restricts a defendant's expressive activity, only if the State correctly determines that a defendant has abused his right to speak may the statute be constitutionally applied.

*Dallaly*, 916 N.E.2d at 952.

"'The first prong of this inquiry may be satisfied by a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation.'" *Id.* (quoting *Shoultz v. State*, 735 N.E.2d 818, 825 (Ind. Ct. App. 2000), *trans. denied*). Here, the record reveals that Tyler was arrested for disorderly conduct after she screamed and swore at the officers. Tyler has therefore established that the State restricted her expressive activity. *See id.* (providing that the recorded established that the State restricted Dallaly's expressive activity where he was arrested for disorderly conduct after he screamed and swore at officers); *Johnson v. State*, 719 N.E.2d 445, 449 (Ind. Ct. App. 1999) (holding that a person's conviction for making unreasonable noise based on loud speaking during a police investigation constitutes state action restricting defendant's expressive activity).

Most cases turn on the second prong of the analysis. The Indiana Supreme Court recently reiterated "that the right of free speech protected in [Article 1, section 9] is expressly qualified by the phrase 'but for the abuse of that right, every person shall be responsible.'" *J.D. v. State*, 859 N.E.2d 341, 344 (Ind. 2007). In order to satisfy the second prong of the test, a defendant "must prove that 'the State could not reasonably conclude that the restricted expression was an "abuse" of [his] right to speak, and therefore, the State could not properly proscribe the conduct, pursuant to its police power, via the disorderly conduct statute.'" *Blackman*, 868 N.E.2d at 585 (quoting *Johnson*, 719 N.E.2d at 449). Generally, whether the State correctly determined that a defendant's expression constituted an abuse of the right to free speech is subjected to rationality review. *Id*. However, if the defendant demonstrates that the expressive activity precipitating the disorderly conduct conviction was political in nature, then the burden shifts to the State to demonstrate that it did not materially burden the claimant's opportunity to engage in political expression. *Id*.; *see also Anderson v. State*, 881 N.E.2d 86, 90 (Ind. Ct. App. 2008). If the speech is determined to be ambiguous, "then the expression is not political, and we review the State's restriction of the expression under standard rational review." *Anderson*, 881 N.E.2d at 90.

"Expressive activity is political if its aim is to comment on government action, including criticism of an official acting under color of law." *Blackman*, 868 N.E.2d at 585. Where the expressive activity focuses on a private party's conduct, including the conduct of the speaker himself, the expression is not political. *Id*. The nature of the expression is reviewed under an objective standard. *Id*. In instances where some of a defendant's expressive activity is deemed political is coupled with other comments found not to be political expression, the "dual nature" of this expression may lead to the conclusion that the expression was ambiguous. *Id*. at 585-586.

*Dallaly*, 916 N.E.2d at 952.

[17] In the instant matter, Tyler and Brownie first encountered the investigating officers after Brownie noticed her damaged vehicle abandoned and parked on the side of the road. Brownie approached the officers and asked "What's going

on? That's my car." Tr. pp. 98-99. After Brownie approached the officers, Officer Leinberger asked Brownie for identification in order to verify that she was indeed the owner of the vehicle. Brownie and Officer Leinberger walked back to the SUV that was being driven by Tyler and in which Brownie had been a passenger. As Brownie and Officer Leinberger continued their conversation and approached the SUV, Tyler started "getting loud," yelling "Don't tell nothing. We know what's going on here. This is bullshit. Don't say a f[******] word." Tr. pp. 103-04. Officer Leinberger instructed Tyler to "keep [her] voice down" telling her "[w]e don't need to yell." Tr. p. 104. Tyler ignored this instruction and kept yelling things to the effect of "We don't need to say anything. Don't say anything to them. Don't give them shit. We know what's going on." Tr. p. 104. Tyler continued to yell even after both Lieutenant Black and Officer Kumbi repeated Officer Leinberger's prior instruction to stop. In all, Tyler was instructed to stop yelling at least four or five times. She did not comply with any of these instructions. As a result of Tyler's actions, Brownie's focus shifted away from Officer Leinberger to Tyler.

[18] The record before us on appeal demonstrates that the aim or focus of Tyler's initial expressive activity was to criticize the actions of the police officers that occurred during the officers' interaction with Tyler and Brownie. Further, nothing in the record indicates that Tyler's initial comments focused on any topic other than the state action which was taken against her and Brownie. We therefore conclude that Tyler's expression therefore qualified as political expression. As such, the burden shifted to the State to demonstrate that it did

not materially burden Tyler's opportunity to engage in political expression. *See Dallaly*, 916 N.E.2d at 953 (providing that the burden shifted to the State to demonstrate that it did not materially burden Dallaly's opportunity to engage in political expression after Dallaly presented evidence demonstrating that the aim or focus of his initial expressive activity was to criticize the actions taken by police officers while effecting his arrest).

[19] The State may demonstrate that it did not materially burden the defendant's opportunity to engage in political expression by producing evidence that the expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests. *Id*. (internal quotations omitted). "'When the expressions of one person cause harm to another in a way consistent with common law tort, an abuse under [Article 1, section 9] has occurred.'" *Id*. (quoting *Madden v. State*, 786 N.E.2d 1152, 1157 (Ind. Ct. App. 2003), *trans. denied*). "'In order to demonstrate such particularized harm, the State must show that the expression caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. Evidence of mere annoyance or inconvenience is not sufficient.'" *Id*. (quoting *Blackman*, 868 N.E.2d at 585).

[20] In *J.D.*, the Indiana Supreme Court held that unlike in cases where the alleged harm resulting from a defendant's exercise of their right to political expression did not rise above the level of a fleeting annoyance, the juvenile defendant abused her right to political expression when the expression, which consisted of persistent loud yelling, obstructed or interfered with the police by obscuring the

officer's "attempts to speak and function as a law enforcement officer." 859 N.E.2d at 344. In reaching this holding, the Indiana Supreme Court found that because the speech in question obstructed and interfered with the police officer and was therefore not "relatively harmless," the juvenile defendant's otherwise political speech "clearly amounted to an abuse of the right to free speech and thus subjected her to accountability under [Article I, section 9]." *Id.* Similarly, in *Dallaly*, we concluded that because Dallaly's speech interfered with the duties of the police officers at the scene, Dallaly abused his free speech rights under Article 1, section 9. 916 N.E.2d at 954. The Indiana Supreme Court's holding in *J.D.* and our conclusion in *Dallaly* are in line with the previously stated belief that police officers conducting a legitimate investigation "must be able to perform their duties without unreasonable interruption." *Anderson v. State*, 881 N.E.2d 86, 91 (Ind. Ct. App. 2008) (quoting *Blackman*, 868 N.E.2d at 588).

[21] Here, the record provides that Tyler's expressions interfered with Officer Leinberger's legitimate attempt to verify that Brownie was the owner of the damaged vehicle that had been abandoned by Brownie's cousin on the side of the road. As a result of Tyler's actions, Brownie's focus shifted from Officer Leinberger to Tyler and she was then unable to continue her conversation with Officer Leinberger. Thus, like in *J.D.* and *Dallaly*, the speech at issue, while political in nature, constituted an abuse of Tyler's free speech rights under Article 1, section 9 because Tyler's speech interfered with Officer Leinberger's ability to conduct a legitimate investigation into who owned the abandoned and

damaged vehicle. Tyler, therefore, may be held accountable for her expressions under Article 1, section 9.

[22] Having concluded that Tyler's expressions were not protected political speech, we now address whether the evidence is sufficient to sustain her conviction for disorderly conduct.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[23] In order to convict Tyler of Class B misdemeanor disorderly conduct, the State was required to prove that Tyler recklessly, knowingly, or intentionally made an unreasonable noise and continued to do so after being asked to stop. Ind.

Code § 35-45-1-3(a)(2).  Based on the nature of Tyler's outbursts, as detailed above, and the fact that she refused to stop yelling when instructed numerous times to do so by the responding officers, we conclude that the evidence is sufficient to sustain Tyler's conviction for Class B misdemeanor disorderly conduct.  Tyler's claim to the contrary effectively amounts to a request for this court to reweigh the evidence, which we will not do.  *See Stewart*, 768 N.E.2d at 435.

## II.  Jury Instructions

[24]    Tyler also contends that the trial court erred in instructing the jury.

> The trial court has broad discretion in the manner of instructing the jury and we review its decision thereon only for an abuse of that discretion.  *Stringer v. State,* 853 N.E.2d 543, 548 (Ind. Ct. App. 2006).  We review the refusal of a tendered instruction by examining whether the tendered instruction correctly states the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the tendered instruction is covered by other given instructions.  *Springer v. State,* 798 N.E.2d 431, 433 (Ind. 2003).  Jury instructions are to be considered as a whole and in reference to each other.  *Stringer,* 853 N.E.2d at 548.  The ruling of the trial court will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury.  *Kelly v. State,* 813 N.E.2d 1179, 1185 (Ind. Ct. App. 2004), *trans. denied.*  Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights.  *Stringer,* 853 N.E.2d at 548.

*Snell v. State*, 866 N.E.2d 392, 395-96 (Ind. Ct. App. 2007).

[25]    "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case

clearly and arrive at a just, fair, and correct verdict." *Id*. at 396 (citing *Gravens v. State,* 836 N.E.2d 490, 493 (Ind. Ct. App. 2005), *trans. denied*).

> In instructing a jury, the trial court has a statutory duty to state to the jury all matters of law that are necessary for its information in giving its verdict. Ind. Code § 35-37-2-2(5); *Dayhuff v. State,* 545 N.E.2d 1100, 1102 (Ind. Ct. App. 1989), *trans. denied*. Each party to an action is entitled to have the jury instructed on his particular theory of complaint or defense. *Collins v. Rambo,* 831 N.E.2d 241, 245 (Ind. Ct. App. 2005) (quotations omitted). "As a general rule, a defendant in a criminal case is entitled to have the jury instructed on any theory of defense which has some foundation in the evidence." *Howard v. State,* 755 N.E.2d 242, 247 (Ind. Ct. App. 2001). This is so even if the evidence supporting the defense is weak and inconsistent. *Id*. However, the evidence must have some probative value to support the defense. *Id*.

*Id*.

[26]  Tyler was convicted of disorderly conduct. Again, "[a] person commits disorderly conduct as a Class B misdemeanor when she recklessly, knowingly, or intentionally makes unreasonable noise and continues to do so after being asked to stop." *Id*. (citing Ind. Code § 35-45-1-3(a)(2)). "Article I, section 9 of the Indiana Constitution provides, 'No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever; but for the abuse of that right, every person shall be responsible." *Id*.

[27]  Prior to trial, Tyler submitted a jury instruction addressing the protected speech provision of Article 1, section 9. The proffered jury instruction read as follows:

It is an issue in this case whether Ms. Tyler's speech was protected by [Article 1, section 9] of the Indiana state constitution, which states that:

> No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.

Indiana's right to free speech imposes limits on prosecutions for Disorderly Conduct. If a person in engaged in "political" speech, he or she may not be convicted of Disorderly Conduct unless the State can show that the person caused actual discomfort to specific and identifiable private citizens or interfered with the comfortable enjoyment of privacy for specific and identifiable private citizens. Mere annoyance or inconvenience is not enough.

To determine whether this increased protection applies to Ms. Tyler, you must engage in the following two-step consideration.

First, you must decide whether State action in this case restricted Ms. Tyler's opportunity to engage in expressive activity. "Expressive activity" has a broad meaning under the Indiana Constitution, and extends to any subject whatsoever and every conceivable mode of expression. State action restricts expressive activity when the [S]tate imposes a direct and significant burden on a person's opportunity to speak his or her mind in whatever fashion he or she deems appropriate. Proof of an arrest for Disorderly Conduct involving loud speech is sufficient to find that State action restricted expressive activity.

Second, you must consider whether Ms. Tyler's expression constituted an abuse of that right to speak. In order to decide this, you must first consider whether or not Ms. Tyler was engaged in political speech, which includes any criticism of the legality or appropriateness of police conduct towards another person. Political speech has more constitutional protection than non-political speech. If you find that Ms. Tyler engaged in political speech, then she abused her right to speak only if the State has convinced you beyond a reasonable doubt that she caused actual discomfort to specific and identifiable private citizens or interfered with the comfortable enjoyment of privacy for specific and identifiable private citizens. If you find that Ms. Tyler was not engaged in political speech, then she abused her right to speak if

the State has convinced you beyond a reasonable doubt that her behavior could rationally be considered "unreasonable noise."

If the State has not convinced you beyond a reasonable doubt that she abused her right to speak, you must find her "not guilty" of Disorderly Conduct.

Appellant's App. p. 65. The trial court refused the tendered instruction, determining that Tyler's speech at issue "wasn't political speech." Tr. p. 305.

[28] Tyler argues on appeal that the trial court erred in refusing her tendered jury instruction. The State acknowledges on appeal that "it appears that the instruction tendered by [Tyler] is a correct statement of the law as accepted by the *Snell* panel and other cases dealing with disorderly conduct." Appellee's Br. p. 13. The State further acknowledges that the substance of the tendered instruction was not covered by any other instruction. As such, our review on appeal is limited to whether there is evidence in the record to support the giving of Tyler's tendered instruction. *See Snell*, 866 N.E.2d at 396; *Stringer*, 853 N.E.2d at 548. In light of our discussion and conclusion above, we believe that there was sufficient evidence in the record to support the giving of Tyler's tendered instruction addressing protected political speech.

[29] Because the proffered instruction is a correct statement of the law that was not covered by any other instructions and the evidence supports the giving of the instruction, we conclude that the trial court erred in refusing the proffered instruction. "However, an error in the giving or refusing of an instruction is harmless where a conviction is clearly sustained by the evidence and the jury

could not properly have found otherwise." *Snell*, 866 N.E.2d at 399 (citing *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001)).

[30] As we concluded above, the evidence is sufficient to sustain Tyler's conviction for disorderly conduct. Thus, even if the jury had been properly instructed, the outcome would have undoubtedly been the same. Stated differently, although Tyler's speech was political in nature, it nevertheless constituted an abuse of Tyler's free speech rights because it interfered with Officer Leinberger's police duties. Accordingly, Tyler was not prejudiced by the trial court's erroneous refusal of her tendered jury instruction.

# Conclusion

[31] In sum, we conclude that the evidence is sufficient to sustain Tyler's conviction for Class B misdemeanor disorderly conduct. We also conclude that while the trial court abused its discretion in instructing the jury in relation to the disorderly conduct charge, the abuse of the trial court's discretion was harmless. Accordingly, we affirm.

[32] The judgment of the trial court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.