**Derrick ANDERSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0706–CR–312.**

Court of Appeals of Indiana.

Feb. 20, 2008.

---

Barbara J. Simmons, Batesville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Derrick Anderson appeals his conviction for Class B misdemeanor disorderly conduct. Specifically, he contends that because his expressions to the responding police officers were protected political speech under Article I, Section 9 of the Indiana Constitution, the evidence is insufficient to support his conviction. Because we conclude that Anderson's expressions were not political speech and that they constituted an abuse of his right to speak, he is subject to accountability under Section 9. In addition, we conclude that the evidence is sufficient to support Anderson's conviction. We therefore affirm.

### Facts and Procedural History

On February 7, 2007, the assistant manager at the Laundry and Tan Connection in the Twin–Aire shopping center in Indianapolis asked Indianapolis Metropolitan Police Department Officer Chris Edwards to ask Anderson to leave the tanning booth he was in because his time had expired and "they couldn't reach him through the door." Tr. p. 4. Officer Edwards knocked on the tanning booth door for approximately two to three minutes, but Anderson did not respond. Officer Edwards then retrieved the key and opened the door. Anderson was lying in the tanning bed, which was off, and did not respond until

Officer Edwards unplugged his headphones. Officer Edwards told Anderson that his time was up and that he needed to leave and then stepped out of the room so that Anderson could get dressed.

When Anderson still had not emerged from the tanning booth ten minutes later, the assistant manager again asked Officer Edwards to ask Anderson to leave. By this time, another IMPD officer, Officer Douglas Lepsky, had arrived on the scene to assist Officer Edwards. When Officer Edwards knocked on the tanning booth door on this occasion, Anderson responded "f* * * you" once or twice. *Id.* at 6. Officer Edwards opened the door, and Anderson was "almost" dressed. *Id.* at 5. Officer Edwards then asked Anderson to "please hurry up because the employees wanted him out of this establishment as soon as possible." *Id.* at 11. Anderson "continued cursing" as he finished dressing. *Id.* Once Anderson was dressed, the officers escorted him to the front of the store. When Anderson still did not leave, Officer Edwards "forcibly told him to leave and had to physically escort him out of the business." *Id.* at 6. As Anderson was being escorted out of the business, he stated that he wanted to buy a lottery ticket. Officer Edwards responded that Anderson "had been asked to leave several times and it was time for him to go." *Id.* Anderson, who still did not leave, was "loud," *id.*, and "verbally abusive," *id.* at 12. Anderson was "cursing loud enough that even though [they] were in the tanning department people in the laundry area were turning [their] attention due to the loud verbal disruption by" Anderson. *Id.*

Once outside, Officer Edwards told Anderson to leave because the business did not want him there any longer. Anderson "continued being verbally abusive by cursing loudly." *Id.* Anderson then walked a couple of paces but stopped. Officer Edwards told Anderson to leave "several" more times. *Id.* at 7. Nevertheless, Anderson refused to do so. At this point Officer Edwards arrested him for disorderly conduct. Some of the customers came outside to watch the ordeal, and customers coming and going witnessed it as well. In all, Officer had to ask Anderson to stop talking three or four times and asked him to leave three or four times as well.

The next day, the State charged Anderson with Disorderly Conduct as a Class B misdemeanor.[1] Following a bench trial, Anderson was found guilty as charged. The trial court sentenced him to 180 days, all suspended but for time served. Anderson now appeals.

### Discussion and Decision

On appeal, Anderson contends that because his expressions to Officers Edwards and Lepsky were protected political speech under Article I, Section 9 of the Indiana Constitution, the evidence is insufficient to support his conviction for disorderly conduct. Before deciding whether the evidence is sufficient to support Anderson's conviction, we must first determine whether his expressions to the officers were protected political speech under Article I, Section 9 of the Indiana Constitution.

■ Article I, Section 9 provides, "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." The right of free speech protected in Section 9 is "expressly qualified by the phrase 'but for the abuse of that right, every person shall be responsi-

---

1. Ind.Code § 35–45–1–3(a)(2).

ble.'" *J.D. v. State,* 859 N.E.2d 341, 344 (Ind.2007). When reviewing whether the State has violated Article I, Section 9, we must determine: (1) whether state action has restricted a claimant's expressive activity and (2) if it has, whether the restricted activity constituted an "abuse" of the right to speak. *Blackman v. State,* 868 N.E.2d 579, 584–85 (Ind.Ct.App.2007) (citing *Whittington v. State,* 669 N.E.2d 1363, 1367 (Ind.1996)), *trans. denied.*

■ The issue in this case is whether the restricted activity constituted an "abuse" of the right to speak. Generally, when we review the State's determination that a claimant's expression was an abuse of the right to free speech under the Indiana Constitution, we need only find that the determination was rational. *Id.* at 585. However, if the expressive activity that precipitated the disorderly conduct conviction was political in nature, the State must demonstrate that it did not materially burden the claimant's opportunity to engage in political expression. *Id.*

■ When the claimant successfully demonstrates that his speech was political, the burden shifts to the State to show that it did not materially burden the claimant's opportunity to engage in political expression. *Id.* "The State can do so by producing evidence that the expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests." *Id.* (quotation omitted). In order to demonstrate such harm, the State must show that the expression caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. *Id.* Evidence of mere annoyance or inconvenience is not enough. *Id.*

■ Expressive activity is political if its aim is to comment on government action, including criticism of an official acting under color of law. *Id.* However, where the individual's expression focuses on the conduct of a private party, including the speaker himself, it is not political. *Id.* We apply an objective standard when reviewing the nature of the expression. *Id.* The claimant bears the burden of proving that the expressive activity was not an abuse of his right to free speech by showing that his expression was political. *Id.* If the expression is ambiguous, then the expression is not political, and we review the State's restriction of the expression under standard rational review. *Id.*

■ Here, Anderson argues that his outbursts were political speech because he was "lodging a complaint against police conduct. His expression was not focused on his conduct or that of another private party." Appellant's Br. p. 10. We disagree. On the one hand, as even Officer Edwards conceded at trial, Anderson's comments were directed toward the officers and not toward anyone else, including the assistant manager. On the other hand, the officers were only doing what the laundry and tanning company wanted done, that is, to have Anderson removed from the premises. In essence, Anderson was complaining about the company's decision to make him leave and not so much about the officers' conduct and thus was asserting a right to be where he was, which is a comment on his own behavior. *See Blackman,* 868 N.E.2d at 585–86. We therefore conclude that Anderson's speech was ultimately ambiguous as to whether he was commenting on his own conduct or that of the officers. Accordingly, we find that Anderson's expressions were not political and are therefore subject to rational review.[2]

---

2. We note that for the most part, the officers did not testify at trial in detail as to what

■ In filing the charges, we find that the State could have reasonably concluded that Anderson's expressive activity—because of its volume, the attention that it attracted, and the interference with the officers' investigation—"was a threat to peace, safety, and well-being" and, therefore, he abused his right to free speech. *Id.* at 587 (quotation omitted). That is, when Officer Edwards—at the assistant manager's request—asked Anderson to leave the tanning bed because he remained well past his allotted time and did not respond when the assistant manager tried to reach him, Anderson became verbally abusive and started cursing loudly. Even after being asked to stop several times and to leave the premises, Anderson continued cursing and refused to leave. As Anderson was escorted out of the business, his outbursts drew the attention of not only the customers on the tanning side but also of the fifteen to twenty customers on the laundry side. Anderson's conduct clearly interfered with the company's ability to offer services in a decent and business-like environment.

■ "Police officers conducting a legitimate investigation must be able to perform their duties without unreasonable interruption." *Id.* at 588. Under the facts of this case, we find that the State could have rationally concluded that where Anderson obstructed and interfered with the officers' attempts to speak and function as law enforcement officers, his expressions amounted to an abuse of his right to free speech. Thus, Anderson was subject to accountability under Article I, Section 9 of the Indiana Constitution.

■ Having concluded that Anderson's expressions were not protected political speech, we now address whether the evidence is sufficient to support Anderson's conviction for disorderly conduct. When reviewing the sufficiency of the evidence to support a conviction, "appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict." *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007) (quotation omitted). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* "Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotation omitted).

■ In order to convict Anderson of disorderly conduct as charged here, the State must have proven that Anderson recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. Ind.Code § 35–45–1–3(a)(2). Based on the nature of Anderson's outbursts, as detailed above, and the fact that he refused to stop talking and leave the business after the officers asked him several times to do so, we conclude that the evidence is sufficient to prove that he recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. That is, Anderson produced decibels of sound that were too loud for the circumstances. *See Blackman,* 868 N.E.2d at 584. Thus, we affirm Anderson's convic-

Anderson said during the course of the encounter. Instead, the officers generally testified that Anderson cursed loudly and was verbally abusive. As noted above, Anderson has the burden of proving that his expressions were political. Because the record does not reflect the specifics of Anderson's expressions, he has not met his burden. Nonetheless, based on the general references to Anderson's expressions, we are able to conclude that his expressions were not political.

tion for Class B misdemeanor disorderly conduct.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.