**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 04 2014, 9:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRADLY HORNSBY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1306-CR-523 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy Jones, Judge
Cause No. 49F08-1303-CM-18958

**February 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a bench trial, Bradly Hornsby was convicted of Public Intoxication[1] and Disorderly Conduct,[2] both class B misdemeanors. Hornsby appeals and raises the following issues:

1. Did the State present sufficient evidence to support his convictions?

2. Does his disorderly conduct conviction violate article 1, section 9 of the Indiana Constitution?

We affirm.

At approximately 9 p.m. on March 20, 2013, Hornsby dialed 911 and requested assistance. Officer Natalie Morgan of the Indianapolis Metropolitan Police Department responded to the call and eventually located Hornsby walking on the main road in the Garden City Trailer Park. Officer Morgan observed Hornsby talking on his cell phone and stumbling around, and as she was coming to a stop, Hornsby walked out into the road and into the side of her still-moving patrol car. Hornsby then continued to lean against the driver's side of the vehicle, and Officer Morgan had to roll down her window and ask him to move so she could exit the car. After being repeatedly told to move, Hornsby stepped aside but continued to hold onto the side of the vehicle. Officer Morgan asked Hornsby what he needed help with, and Hornsby told her that he needed a ride. When Officer Morgan responded that she could not give him a ride, Hornsby became very angry and began shouting. Officer Morgan detected the odor of an alcoholic beverage on Hornsby's breath and observed that his speech was slurred and his eyes were red and glassy. At that point, Officer Morgan handcuffed

---

[1] Ind. Code Ann. § 7.1-5-1-3 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).
[2] Ind. Code Ann. § 35-45-1-3 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.)

Hornsby and placed him under arrest for public intoxication. Hornsby continued to yell and started shouting for his sister, who lived in the trailer park. Officer Morgan and another officer who arrived to assist her repeatedly told Hornsby to quiet down, but he continued to shout. At one point, Hornsby's cell phone began to ring and he shouted at the officers to answer it. When they refused, Hornsby attempted to walk around the patrol car to retrieve the phone, and the assisting officer grabbed him by the arm and told him to stay where he was. Hornsby pulled away, and the officer took Hornsby to the ground. Thereafter, Hornsby was taken to jail.

As a result of these events, Hornsby was charged with public intoxication and disorderly conduct. A bench trial was held on May 22, 2013, and Hornsby was found guilty as charged. Hornsby now appeals.

1.

Hornsby first argues that the State presented insufficient evidence to support his public intoxication conviction. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131 (Ind. Ct. App. 2008).

It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). Accordingly, the question on appeal is whether the inferences supporting the verdict were reasonable, not whether other, "more reasonable" inferences could have been drawn. *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind. 2004). Because reaching alternative inferences is the function of the trier of fact, we may not reverse a conviction merely because a different inference might plausibly be drawn from the evidence. *Thompson v. State*, 804 N.E.2d 1146.

Indiana's public intoxication statute provides, in relevant part, as follows:

it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol . . .
if the person:
(1) endangers the person's life;
(2) endangers the life of another person;
(3) breaches the peace or is in imminent danger of breaching the peace; or
(4) harasses, annoys, or alarms another person.

I.C. § 7.1-5-1-3. Hornsby does not dispute that he was in a public place at the time of his arrest; rather, he argues that the State presented insufficient evidence to establish that he was intoxicated or that he endangered his life or the life of another person, breached or was in imminent danger of breaching the peace, or harassed, annoyed, or alarmed another person.

"Intoxicated" is defined, in relevant part, as under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code Ann. § 9-13-2-86 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.). "The State may establish impairment by presenting

4

evidence of: '(1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech.'" *Stephens v. State*, 992 N.E.2d 935, 938 (Ind. Ct. App. 2013). Here, Officer Morgan testified that she smelled the odor of an alcoholic beverage on Hornsby's breath, his eyes were red and glassy, and he was staggering. She testified further that Hornsby walked into the side of her moving patrol vehicle and that he became irate when she refused to give him a ride. This evidence was plainly sufficient to support a conclusion that Hornsby was intoxicated.

Turning now to the question of whether Hornsby endangered himself or others, breached or was in imminent danger of breaching the peace, or harassed, annoyed, or alarmed another person, we first note that the General Assembly added these elements to the public intoxication statute in 2012. *Stephens v. State*, 992 N.E.2d 935. In light of the statute's recent amendment, we have relatively little precedent interpreting this portion of the statute. *Id.* We have little difficulty, however, concluding that the trial court's finding that Hornsby endangered himself is supported by the evidence. Officer Morgan testified when she first spotted Hornsby, he was staggering alongside the main road inside the trailer park, where there were no sidewalks, after 9:00 p.m. Hornsby then walked out into the street and into the side of her moving vehicle. Moreover, Hornsby himself testified that the temperatures were below freezing that night and he was wearing only a tee shirt and shorts. Officer Morgan testified that she did not feel comfortable leaving Hornsby there because he was too intoxicated to care for himself and she was concerned that he would walk into traffic

5

again. This evidence was sufficient to support a conclusion that Hornsby endangered himself. Hornsby's arguments to the contrary are nothing more than requests to reweigh the evidence and draw inferences unfavorable to the verdict, which we will not do. The State presented sufficient evidence to support Hornsby's public intoxication conviction.

Next, Hornsby argues that the State presented insufficient evidence to support his disorderly conduct conviction. In order to convict Hornsby of disorderly conduct as charged, the State was required to prove Hornsby recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. *See* I.C. § 35-45-1-3. Hornsby argues that the State failed to prove that he made unreasonable noise. "For purposes of the disorderly conduct statute, noise is unreasonable if it is too loud for the circumstances." *Yowler v. State*, 894 N.E.2d 1000, 1003 (Ind. Ct. App. 2008).

In support of his argument that he did not make unreasonable noise, Hornsby points out that there was no evidence that his tirade drew a crowd or impeded traffic.[3] Our Supreme Court has noted, however, that the disorderly conduct statute does not require a defendant's conduct amount to a public nuisance. *Whittington v. State*, 669 N.E.2d 1363 (Ind. 1996) (upholding disorderly conduct conviction where the noise occurred inside a private apartment and there was no evidence that it was detectable beyond the walls of the apartment). In

---

[3] Hornsby also argues that he did not make unreasonable noise because his shouting did not constitute a threat to officer safety or interfere with the police investigation and was, at most, a momentary annoyance. The disorderly conduct statute, however, contains no such requirement. The cases upon which Hornsby relies in support of his argument in this regard discussed the level of noise required to support a disorderly conduct conviction when the defendant was engaged in political speech for the purposes of article 1, section 9 of the Indiana Constitution. *See J.D. v. State*, 859 N.E.2d 341 (Ind. 2007); *Price v. State*, 622 N.E.2d 954 (Ind. 1993). We separately address and reject Hornsby's argument that he was engaged in political speech below.

*Whittington*, our Supreme Court reasoned that "our legislature deleted any reference to a requirement that a person act purposely or recklessly toward annoying the public. . . . Thus, the application of the statute can extend to situations in addition to those constituting public nuisance." *Id.* at 1367. The evidence presented at trial established that Hornsby came into contact with Officer Morgan in a residential area shortly after 9:00 p.m. on a weeknight. When Officer Morgan refused to give Hornsby a ride, he became very loud and argumentative. When another officer arrived to assist Officer Morgan, Hornsby continued to yell and call out for his sister. This evidence was sufficient to support the trial court's finding that Hornsby made unreasonable noise.

3.

Finally, Hornsby argues that his disorderly conduct conviction violates article 1, section 9 of the Indiana Constitution, which forbids the General Assembly from passing any law "restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever[.]" The right is qualified, however, by the following clause: "[F]or the abuse of that right, every person shall be responsible." Ind. Const. art. 1, § 9. When reviewing whether a disorderly conduct conviction violates article 1, section 9, we must determine: (1) whether State action has restricted the defendant's expressive activity, and, if so, (2) whether the restricted activity constituted an abuse of the right to speak. *Blackman v. State*, 868 N.E.2d 579 (Ind. 2007), *trans. denied*.

Because the State concedes that Hornsby's expressive activity was restricted, we will proceed directly to the second step of the analysis: whether Hornsby's behavior constituted

7

an abuse of the right to speak. As a general matter, to uphold the State's determination that a defendant's expression was an abuse of the right to free speech guaranteed by the Indiana Constitution, we need find only that the determination was rational. *Anderson v. State*, 881 N.E.2d 86 (Ind. 2008). If, however, the expressive activity giving rise to the disorderly conduct conviction was political in nature, the State must demonstrate that it did not materially burden the claimant's opportunity to engage in such expression. *Id.* Once a claimant successfully demonstrates that his speech was political, the burden shifts to the State to show that it did not materially burden the defendant's opportunity to engage in political expression. *Id.* The State may do so by establishing that the expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests. *Id.*

A defendant's expressive activity will be considered political in nature "if its aim is to comment on government action, including criticism of an official acting under color of law." *Id.* at 90. The defendant bears the burden of establishing that his expression was political, and we apply an objective standard when reviewing such claims. *Anderson v. State*, 881 N.E.2d 86. "If the expression is ambiguous, then the expression is not political, and we review the State's restriction of the expression under standard rational review." *Id.* at 90.

On appeal, Hornsby argues that the speech precipitating his disorderly conduct conviction was political in nature because he was commenting on the officers' actions in arresting him. This assertion is not supported by the evidence favorable to the verdict. Officer Morgan testified that when she told Hornsby that she would not give him a ride, he became loud and asked several times, "Well what am I supposed to do[?]". *Transcript* at 8.

8

Officer Morgan testified further that Hornsby repeatedly called out for his sister and was "basically just yelling . . . . [H]e wasn't actually saying anything." *Id.* at 19. Even if Hornsby made some comments concerning the propriety of the officers' actions, most of his speech was directed toward other matters. Consequently, his speech was, at best, ambiguous. We therefore conclude that Hornsby's speech was not political in nature, and is therefore properly reviewed under the rationality standard set forth above. Because Hornsby has made no attempt to analyze his claims under this less-stringent standard, any claim that his conviction violated the rationality standard is waived. *See Davis v. State*, 835 N.E.2d 1102 (Ind. Ct. App. 2005) (noting that failure to make a cogent argument results in waiver), *trans. denied*.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.