# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 08 2019, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel Hageman
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General

Matthew J. Goldsmith
Certified Legal Intern
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| General M. Boyd, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 8, 2019 <br><br> Court of Appeals Case No. 19A-CR-363 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David Hooper, Magistrate <br><br> Trial Court Cause No. 49G12-1808-CM-25692 |

**Sharpnack, Senior Judge.**

# Statement of the Case

[1] General M. Boyd appeals his conviction of disorderly conduct, a Class B misdemeanor.[1] We affirm.

# Issue

[2] Boyd raises one issue, which we restate as: whether the trial court erred in rejecting Boyd's claim that his conduct was constitutionally protected speech.

# Facts and Procedural History

[3] On the night of July 26, 2018, Officer Kenneth Casey of the Indianapolis Metropolitan Police Department was dispatched to Monument Circle with other officers to investigate a report of a "suspicious person." Tr. Vol. 2, p. 6. As the officers approached the subject of the report, Officer Casey noticed another man, later identified as Boyd, sitting in the doorway of the Soldiers and Sailors Monument with some belongings.

[4] While the officers spoke with the subject of the report, Officer Casey saw Boyd gather up his belongings and walk away, down the Monument's steps and then along a street. As he walked away, Boyd "continuously" looked back at the officers. *Id.* Officer Casey deemed Boyd's behavior to be suspicious.

---

[1] Ind. Code § 35-45-1-3(a)(2) (2014).

By the time the officers finished talking with the reported suspicious person, Boyd was walking back toward the Monument. Officer Casey and his fellow officers approached Boyd. Officer Casey wanted to talk with Boyd because he was concerned that sleeping in the Monument's doorway could "be a potential hazard" to anyone exiting the Monument. *Id.* at 7.

As the officers approached Boyd, the following events occurred:

> A     As we were doing that, he started yelling at me and the other officers, asking why we were approaching him and getting louder and louder and saying we can't – we didn't have to stop him, or anything.
>
> Q     And could you describe this yelling for me?
>
> A     Yes. It was – He was just basically spouting, you know, why are you guys stopping us? Why are you guys stopping me? You know, why are you approaching me right now, or anything like that. And, I was proceeding to try to tell him at the same time, as well, as he kept getting louder and louder.
>
> Q     And did you ask him to stop?
>
> A     Yes. Me and the other officers asked him at least five times to stop, but he still continued to get louder and louder, drawing a larger crowd.
>
> Q     And, I mean, was it – Would you describe the yelling like screaming or like just a loud voice, like maybe like this for a courtroom?
>
> A     It was more or less screaming then.
>
> Q     Uh-huh.

A       Screaming, I wouldn't say maybe at the top of his lungs, but quite loud that you could overhear it over the motorcycles that were driving through the Monument.

Q       And about what time was this?

A       It was approximately about 12:00 a.m.

Q       And were there other people on the street?

A       Yes.

Q       And did this cause any of these people to get involved or watch or –

A       There was quite a few people that stopped and observed while we were on the street talking to Mr. Boyd as he was getting louder.  We were trying to calm him down and tell him to be a little more silent so we could just have a conversation.  But, as he kept yelling louder and louder, bikers started stopping and then the motorcyclist stopped, as well, and we had quite a bit or a little bit of a crowd forming up during that altercation.

Q       Thank you.  How long did this disturbance take?

A       I can't be too certain, but it probably was maybe about 45 minutes to an hour.

Q       And he was yelling that whole time, or –

A       It was probably about half the time.

*Id.* at 7-8.

Boyd testified that he "wasn't doing anything" when Officer Casey and other officers "ran up on [him]." *Id.* at 13.  He described his interaction with the officers as follows:

> Q       What was the content of your speech?  What did you say when he approached you?
>
> A       This is how I reacted.  He said, hey, stop.  So, I turned around and said, for what.  And, he said, oh.  I said, for what?  Why do you want to speak to me?  And he said, you, you have to stop.  And I said, for what?  What am I doing?  And, that's when I got excited and I said why, why, why am I being stopped.  Because he looked with an intimidating factor and his face was already angry, and I did nothing to him.  So, I don't know why he stopped me.

*Id.* at 13-14.

[8] Boyd admitted that he was in an "excited" state while interacting with the officers.  *Id.* at 14.  The officers eventually arrested him.

[9] On August 6, 2018, the State charged Boyd with disorderly conduct, a Class B misdemeanor.  The case was tried to the bench, and Boyd claimed his conduct was protected speech under the Indiana Constitution.  The trial court ordered the parties to file briefs discussing the constitutional issue.  After reviewing the briefs, the trial court determined Boyd was guilty as charged and imposed a sentence.  This appeal followed.

## Discussion and Decision

[10] Both parties frame the issue on appeal as whether the State presented sufficient evidence to sustain Boyd's conviction of disorderly conduct.  To obtain a conviction as charged, the State was required to prove beyond a reasonable doubt that Boyd:  (1) recklessly, knowingly, or intentionally; (2) made an

unreasonable noise; and (3) continued to do so after being asked to stop. Ind. Code § 35-45-1-3(a)(2).

[11] Despite the parties' framing of the issue, Boyd does not dispute that his conduct during the police encounter met the requirements of Indiana Code section 35-45-1-3(a)(2). He instead claims that he should not have been arrested and prosecuted because he was engaging in expressive conduct that is protected by article 1, section 9 of the Indiana Constitution. In other words, Boyd is raising a constitutional challenge to Indiana Code 35-45-1-3 as applied to his conduct. We review de novo allegations of a constitutional violation. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015).

[12] Article 1, section 9 provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible."

[13] When reviewing the constitutionality of an application of the disorderly conduct statute, we first ask whether State action has restricted a claimant's expressive activity. *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996). Here, the State concedes that Boyd's arrest restricted expressive activity. Appellee's Br. p. 9. Next, we consider whether the defendant's activity constituted an "abuse" of the right to speak. *Whittington*, 669 N.E.2d at 1367.

[14] Generally, when the State determines that a claimant's expression was an abuse of the right to free speech under the Indiana Constitution, we need only find

that the determination was rational. *Anderson v. State*, 881 N.E.2d 86, 90 (Ind. Ct. App. 2008). However, if the expressive activity that precipitated the disorderly conduct conviction was political in nature, the State must demonstrate that it did not materially burden the claimant's opportunity to engage in political expression. *Id.* Where an individual's expression focuses on the conduct of a private party, including the speaker himself or herself, the expression is not political. *Whittington*, 669 N.E.2d at 1370.

[15]    In this case, Boyd's remarks were focused on himself ("What am I doing?") and were arguably not political. *See Williams v. State*, 59 N.E.3d 287, 294-95 (Ind. Ct. App. 2016) (defendant's speech not unambiguously political; her comments were directed toward herself and other private parties).

[16]    Even if Boyd's comments were political in nature, they still amounted to an abuse of the right to speak. In *J.D. v. State*, 859 N.E.2d 341 (Ind. 2007), a deputy sheriff stationed at a group home for children asked J.D., a juvenile, to speak with her in her office. The deputy wanted to talk with J.D. about her relationship with the home's manager and had no plan to arrest J.D.

[17]    J.D. entered the deputy's office, but instead of conversing with the deputy, J.D. repeatedly and loudly interrupted her. The deputy repeatedly asked J.D. to stop yelling, but J.D. disregarded the deputy's requests. J.D. continued yelling even after the deputy warned her that she could be arrested if she did not lower her voice. The deputy eventually put J.D. in custody, and a juvenile court later

determined she was a juvenile delinquent for an act that would be Class B misdemeanor disorderly conduct if committed by an adult.

[18] On appeal, J.D. argued that her arrest restricted her right to engage in political speech. The Indiana Supreme Court determined that J.D.'s "alleged political speech" consisted of yelling over the deputy and frustrating her attempts to speak and function as a law enforcement officer. *Id.* at 344. The Court determined she had abused her right to express herself, and her arrest did not violate section 9 of the Indiana Constitution.

[19] In Boyd's case, Officer Casey did not want to arrest Boyd when he approached him. Instead, Officer Casey merely wanted to speak with Boyd about occupying the doorway to the Monument, which posed a safety hazard. Instead of having a discussion with the officers, Boyd shouted at them, loudly enough to be heard over passing motorcycles. The officers asked him to speak more quietly, but he continued to shout for approximately thirty minutes, drawing a crowd and causing a passing motorcyclist to stop. Much like the juvenile in *J.D.*, Boyd's conduct obstructed and interfered with Officer Casey's attempts to speak and function as a law enforcement officer. As a result, Boyd abused his right to express himself, and even if his speech was political, the State did not materially burden his right to free expression. His shouting at police officers for thirty minutes was not protected under section 9.

[20] Boyd cites *Jordan v. State*, 37 N.E.3d 525 (Ind. Ct. App. 2015), in support of his claim that he did not abuse his right to engage in political speech, but that case

is distinguishable. In *Jordan*, an officer performed a traffic stop of Jordan's vehicle. Jordan began to yell at the officer shortly after they began conversing, and she continued to yell while the officer informed her that he was impounding her vehicle. The officer ultimately gave Jordan a citation, and she cleaned out her car and stood on a sidewalk while a tow truck prepared to take her vehicle away, shouting loudly the entire time. The officer repeatedly warned Jordan to be quiet and ultimately arrested her. A panel of this court reversed Jordan's conviction for Class B misdemeanor disorderly conduct, concluding Jordan's speech was political in nature and that her screaming at the officers during the stop and while she stood on the sidewalk was not an abuse of that right.

[21] There are several crucial distinctions between the facts of *Jordan* and the facts of Boyd's case. In *Jordan*, the officer demanded that Jordan be quiet and leave the scene of the traffic stop. In Boyd's case, Officer Casey did not want to silence Boyd. To the contrary, he wanted to have a conversation with Boyd. Next, although Jordan's conduct was annoying, she did not prevent the officer from doing his job. He conducted the stop, issued a citation to Jordan, and impounded her car, all while Jordan shouted at him. By contrast, in Boyd's case his conduct completely obstructed Officer Casey from talking with him about how occupying the Monument's doorway could pose a safety hazard. This case more closely resembles *J.D.*, in which the officer wanted to talk with J.D. and was unable to do so because of J.D.'s shouting.

# Conclusion

[22] For the reasons stated above, we affirm the judgment of the trial court.

[23] Affirmed.

Vaidik, C.J., and Najam, J., concur.