## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2016, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael Frischkorn
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark D. Vaughn, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 31, 2016 <br><br> Court of Appeals Case No. <br> 30A01-1512-CR-2141 <br><br> Appeal from the <br> Hancock Superior Court <br><br> The Honorable <br> Terry K. Snow, Judge <br><br> Trial Court Cause No. <br> 30D01-1502-F4-185 |

**Kirsch, Judge.**

Following a jury trial, Mark D. Vaughn ("Vaughn") was convicted of Level 6 felony theft[1] and Level 4 felony burglary[2] and was adjudicated as an habitual offender.[3] Vaughn appeals, raising the following restated issue: whether the State presented sufficient evidence to convict him of felony theft and burglary.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

On the morning of February 6, 2015, Vaughn, his nephew Joshua Priest ("Priest"), and Vaughn's friend, Matthew Beeman ("Beeman"), left Anderson, Indiana in Vaughn's green GMC Jimmy SUV ("the SUV") and were "looking for a house to break into." *Tr.* at 202. Eventually, they stopped at a house, later determined to be owned by a woman named Geanell Shores ("Shores"). Vaughn exited the car, knocked on the door, looked in the windows, and then he came back to the SUV, retrieved some tools, and broke into the house. Beeman and Priest left, but returned to Shores's house "to see if [Vaughn] was ready," but he was not and told Priest to leave and come back. *Id*.

Beeman and Priest left and returned for Vaughn two more times. On their second trip back to the house, Vaughn gave Priest a pillowcase containing items from Shores's home, and Priest took it out of the house and placed it inside the

---

[1] *See* Ind. Code § 35-43-4-2(a)(1).

[2] *See* Ind. Code § 35-43-2-1(1).

[3] *See* Ind. Code § 35-50-2-8(a).

SUV. On Priest's next trip into the house, Priest looked for Vaughn, but could not find him. While Priest was inside the house, Deputy Russell Silver ("Deputy Silver") of the Hancock County Sheriff's Department arrived. He had been dispatched to investigate a suspicious vehicle in the area, as reported by Shores's neighbor.

[5] Deputy Silver spotted the described green GMC SUV in Shores's driveway, and he pulled into the driveway and parked behind it. A man, later determined to be Beeman, was seated in the driver's seat of the SUV. Deputy Silver approached and began speaking to Beeman. Around that time, Deputy Joe Hunt ("Deputy Hunt") arrived, and based on Beeman's comments to police, Deputy Hunt walked to the back of the house to look for another individual.

[6] Deputy Hunt found Priest behind the house near the back door and ordered him to the ground. Eventually, Deputy Silver placed both Beeman and Priest in handcuffs. Deputies found items in Priest's pockets, including some jewelry and cash. Based on Priest's statements to Deputy Silver, the two deputies entered the house looking for a third person, later determined to be Vaughn. The house had been ransacked, including drawers pulled out, doors opened, and items tossed on the floor. Deputies saw a .22 caliber revolver inside the house, near the back door. Finding no one in the house, deputies established a perimeter and began a search for Vaughn.

[7] Deputy Scott Chapman ("Deputy Chapman") and his K-9 partner Brix followed a set of footprints in the snow that led to a wooded area across the

road to the east of Shores's house. Brix tracked Vaughn's scent to a large, round hay bale. He starting digging at the ground, stuck his head under the bale, and pulled out a pillowcase, which he bit and tore apart. The pillowcase contained personal items, including jewelry and money.

[8] Law enforcement continued to track Vaughn, but lost his footprints near some brush by a creek. Assistant Police Chief Brian Pryor ("Assistant Chief Pryor") of the Shirley Police Department and his K-9 partner arrived and began to assist with tracking Vaughn. Deputy Chapman located Vaughn lying face down in a briar patch, and although officers ordered him to come out, he did not do so. Assistant Chief Pryor deployed his K-9, and the dog began biting Vaughn's leg. Vaughn did not immediately comply with orders to come out, and eventually Deputy Chapman went into the briar patch to try to pull out Vaughn, who tried to grab Deputy Chapman's arms. A struggle ensued, and other officers moved in to assist and eventually took Vaughn into custody.

[9] On June 23, 2014, the State charged Vaughn with Level 4 felony burglary, Level 6 felony theft, and Class A misdemeanor resisting law enforcement. The State also filed an habitual offender count. A two-day jury trial was held in August and September 2015.

[10] At trial, Shores identified her house by address and photograph, stating that she lived there with her daughter and two grandchildren. On the date in question, Shores and her daughter both left for work around 6:30 a.m., and her grandchildren got on the school bus within an hour thereafter. At around 10:30

a.m., she received a call at work from her mother, who lived nearby, advising Shores about the police activity occurring at Shores's house. Shores arrived at the scene shortly thereafter, and she advised law enforcement that two pillowcases were missing, as well as jewelry and other personal belongings. At trial, Shores was shown pictures of the contents of the bag that Brix had pulled from beneath the hay bale, and she identified the contents as her own, including jewelry, drawers of her jewelry box, and photographs. She also identified the torn pillowcase from her home. She testified that several other necklaces were taken that day and never recovered, including a necklace her deceased husband had given her and a gold locket from her grandson. Shores testified that she did not know the men who were apprehended, and they did not have permission to be in her house that day or to take her belongings.

[11] Priest testified that, on February 6, he, Vaughn, and Beeman left Anderson in Vaughn's SUV. Priest stated that he knew "what was going to happen" that day, explaining, "We were going to burglarize somebody's house." *Tr.* at 204. Priest was shown a picture of the items that the deputies found in Priest's pockets, and in response, he testified that those items came from the pillowcase that Vaughn had given him to put in the SUV. The items removed from Priest's pockets included five or so necklaces, a bracelet, a medallion or coin in a case, and some cash. *State's Ex.* 4. Priest testified that, while he was inside Shores's home, he saw a .22 caliber revolver, which he picked up and put in his pocket, but he threw it when he looked out a window and saw that the police had arrived. Priest stated that, at the time of this incident, he was on probation for

another offense and that, as result of the events at Shores's home, he pleaded guilty to burglary and theft.

[12] Beeman testified in Vaughn's defense. He conceded that he, Vaughn, and Priest set out that morning with a plan "to burglarize" a house. *Tr.* at 253. Beeman testified that Vaughn and Priest went into the home, and Priest came out carrying a pillowcase containing items from Shores's home, but Beeman testified that he did not personally observe Vaughn enter or exit Shores's home. Beeman said that, at some point, he and Priest drove to a neighbor's to ask about scrap metal and then returned to the original house. Beeman said Priest went back inside the house, which is when Beeman moved over to the driver's seat and was found waiting there when the Sheriff's Department arrived. As a result of the events that happened that day, Beeman pleaded guilty to burglary and theft.

[13] The jury found Vaughn guilty of Level 4 felony burglary and Level 6 felony theft, but not guilty of Class A misdemeanor resisting law enforcement. Vaughn waived a jury trial on the habitual offender allegation, and the trial court determined that Vaughn was an habitual offender. The trial court sentenced Vaugh to ten years on the Level 4 felony burglary conviction, enhanced by ten years for the habitual offender finding, and it imposed a concurrent two-year sentence on the Level 6 felony theft conviction, for an aggregate twenty-year sentence. Vaughn now appeals.

# Discussion and Decision

Vaughn claims that the State failed to present sufficient evidence to support his convictions. The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012). We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Id.* If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt, then we will uphold the verdict. *Id.* A conviction may be based upon circumstantial evidence alone. *Long v. State*, 935 N.E.2d 194, 198 (Ind. Ct. App. 2010), *trans. denied*. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied.* "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker*, 968 N.E.2d at 229 (emphasis in original).

## I. Burglary

Initially, Vaughn asserted in his Appellant's Brief that the evidence presented at trial was insufficient as to both his Level 6 felony theft and Level 4 felony burglary convictions. With regard to the burglary conviction, his argument was that the burglary statute required proof of intent to commit "a felony" in the dwelling, and he claimed that, here, the evidence was not sufficient to establish *felony* theft. Therefore, he argued, his burglary conviction should be vacated.

In his Reply Brief, however, Vaughn acknowledges that the current and applicable burglary statute requires proof of "an intent to commit a felony *or theft*" in the dwelling,[4] such that intent to commit felony theft is no longer required in order to convict of burglary. *Reply Br.* at 7 (emphasis added). Vaughn's prayer for relief in his Reply Brief asks us to vacate his conviction for the Level 6 felony, but does not ask for relief from the burglary conviction. It thus appears that Vaughn has abandoned any challenge to his burglary conviction and is appealing only his Level 6 felony theft conviction. However, to the extent that Vaughn does challenge his burglary conviction, we reject his claim.

[16]  Indiana Code section 35-43-2-1(1) states, in pertinent part:

> A person who breaks and enters the building or structure of another person, with intent to commit *a felony or theft* in it, commits burglary, a Level 5 felony. However, the offense is:
>
> (1) a Level 4 felony if the building or structure is a dwelling[.]

Ind. Code § 35-43-2-1(1) (emphasis added). A person commits Class A misdemeanor theft by knowingly or intentionally exerting unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. Ind. Code § 35-43-4-2(a); *Appellant's App.* at 56, 63. To convict Vaughn as charged, the State was required to prove that on or about

---

[4] Indiana Code 35-43-2-1 was amended effective July 1, 2014, and, among other changes, the "or theft" language was added to the statute. *See* P.L. 158-2013, Sec. 460.

February 6, 2015, he broke and entered Shores's home "with the intent to commit a felony or theft in it[.]" *Appellant's App*. at 70.

[17]     Here, the State presented evidence that Vaughn, Priest, and Beeman left Vaughn's home in Anderson, Indiana in Vaughn's SUV on the morning of February 6, 2015 with the plan to burglarize one or more homes. They stopped at Shores's home and parked in her driveway. Vaughn exited the SUV, knocked on the door, and looked in the windows. Thereafter, he returned to the SUV, retrieved one or more tools, and entered Shores's home without her permission. Alone or with Priest, Vaughn ransacked the inside, dumping out drawers, opening cabinets, and tossing items on the floor. Priest entered the home at least two times to tell Vaughn it was time to leave, but Vaughn indicated he was not ready. At one point, Vaughn gave one pillowcase of items to Priest, who took it to the SUV, and, later, Vaughn took another pillowcase containing items with him when he left Shores's house and hid in a nearby field. Authorities and at least one police K-9 dog followed footprint tracks in the snow, and the K-9 found the pillowcase under a hay bale near where Vaughn was lying on the ground in a thick briar patch. Shores confirmed that the house was her dwelling, identified the two pillowcases and the contents as belonging to her, and testified that she did not know Vaughn and never gave him permission to enter her home or take her belongings. We find that the State presented sufficient evidence to convict Vaughn of Level 4 felony burglary.

## II. Felony Theft

[18] Turning to the challenged Level 6 felony theft conviction, Vaughn asserts that the State failed to present sufficient evidence that Vaughn committed felony theft because the State failed to present evidence from which the jury could infer that the monetary value of the stolen items was at least $750. Vaughn asserts that "[a]lthough pictures were taken of the items in the field, there was no evidence presented of any kind regarding the value of those items." *Appellant's Br*. at 8. Therefore, he claims, the evidence presented was insufficient from which a jury could infer that the items stolen had a value of at least $750, necessary for felony theft.[5] Based on the record before us, we agree.

[19] The State charged that on or about February 6, 2015,

> Vaughn did knowingly exert unauthorized control over the property of [] Shores, <u>AND</u> the value of the property is at least seven hundred fifty dollars ($750) and less than fifty thousand dollars ($50,000); <u>OR</u> (B) the person has a prior unrelated conviction for: (i) theft under this section; or (ii) criminal

---

[5] Vaughn suggests that the State "admitted" to a lack of evidence of property value when, in closing argument, the prosecutor stated:

> And the defense tells you that, you know, we didn't prove our theft because of the value and so forth, that was a misdemeanor and unless the property is at least Seven Hundred and Fifty Dollars it becomes a level 6 felony. You know, I care more about the burglary than I do about what level offense you find the theft to be.

*Tr*. at 273; *Appellant's Br*. at 8.

conversion with intent to deprive [] Shores of any part of its value or use.

*Appellant's App.* at 71 (emphasis in original). Final Instruction No. 6 read:

The crime of **Theft** is defined by statute as follows:

A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class A misdemeanor. The offense is a Level 6 Felony if the value of the property is at least $750 and less than $50,000.

To convict the defendant, the State must have proved each of the following elements:

The Defendant:

1. Knowingly or Intentionally,

2. Exert [sic] unauthorized control over the property of another person, and,

3. The value of the property was over $750 but less than $50,000,

4. With the intent to deprive the owner of the value or use of said property.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

> If the State did prove each of these elements beyond a reasonable doubt, you should fin[d] the defendant guilty of Theft a Level 6 Felony.

*Id*. at 56-57 (emphasis in original).

[20] At trial, photographs were admitted into evidence showing the contents of the pillowcase that Brix found in the field. *State's Ex*. 9, 10. Brix tore the pillowcase, and the items were photographed as they appeared at that time, strewn in the field amongst sticks, and hay, and snow. *State's Ex*. 10. Several necklaces, some hair barrettes, a few coins, and other miscellaneous personal items like pictures and small boxes can be seen. Another photograph was admitted that showed items that authorities removed from Priest's pockets, which had been set out on the hood of the police car and photographed. *State's Ex*. 4. Priest testified that some items in the photograph were his own – such as his wallet, pliers, and a glove – but others were items that he or Beeman had removed from the pillowcase in the car, including four or five necklaces, two bracelets, a medallion or coin in a case, and some folded dollar bills, although the quantity and denominations are not visible. *Id*. When Shores was asked at trial to place a monetary value on the items taken, she replied, "It would be very hard to because most of it was costume jewelry," noting the sentimental value of two necklaces in particular that she did not get back. *Tr*. at 173. Although Priest testified that while inside Shores's home he saw a .22 caliber revolver and put it in his pocket, he removed the gun and "threw it to the right

of me into a corner," when he saw that law enforcement had arrived at the scene. *Id*. at 218-19.

[21] Thus, at trial, no testimony was presented concerning how much cash Shores was missing or what amount of cash was found in the pillowcases. There was no inventory of the contents of the pillowcases introduced. Priest had picked up but discarded the pistol in the home before being arrested, and Shores did not testify that any gun or ammunition was missing. Although some jewelry pieces can been seen, Shores did not place a value on them and stated that they were costume jewelry. Given the record before us, we cannot say that the jury was presented with sufficient evidence from which it could reasonably determine that the dollar value of the stolen goods was at least $750.

[22] The State argues that, regardless of value, the felony theft conviction is valid because, under the theft statute, the offense is a Level 6 felony if "the property is a firearm," and Priest admitted that he put the .22 caliber pistol in his pocket, thereby exerting unauthorized control over it, before throwing it into a corner. Indiana Code section 35-43-4-2 reads:

> (a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class A misdemeanor. However, the offense is:

> (1) a Level 6 felony if:

> (A) the value of the property is at least seven hundred fifty dollars ($750) and less than fifty thousand dollars ($50,000);
>
> (B) *the property is a firearm*; or
>
> (C) the person has a prior unrelated conviction for:
>
>> (i) theft under this section; or
>>
>> (ii) criminal conversion under section 3 of this chapter[.]

Ind. Code § 34-43-4-2(a) (emphasis added).

[23] We are not persuaded by the State's argument that the jury based Vaughn's Level 6 felony theft conviction upon theft of a firearm. First, we observe that the evidence presented was that Priest did not have the firearm on him when he was arrested, deputies saw the .22 handgun inside the house near the back door, and Shores did not testify that any firearms were missing from her home. Second, neither the charging information nor Final Instruction No. 6 cited or referred to theft of a firearm. *Appellant's App*. 56-57, 71. Rather, Final Instruction No. 6 instructed the jury to convict if it found the property's value was $750 or more. *Id*. at 56-57. Although subsection (a)(1)(B) of the theft statute permits conviction as a Level 6 felony if the property stolen was a firearm, the evidence presented and the instructions given in this case do not support a determination that the jury convicted Vaughn of felony theft based upon theft of a firearm.

[24] Alternatively, the State argues that "it could have rested its conviction [] on the fact that [Vaughn] had a prior conviction for theft." *Appellee's Br*. at 10-11. Indiana Code 35-43-4-2(a)(1)(C)(i) provides that the offense is a Level 6 felony if the person has a prior conviction for theft. However, as Vaughn points out, the prior conviction was not presented as evidence nor was a bifurcated hearing conducted at which the State would have been required to prove that Vaughn was previously convicted of theft. Furthermore, Final Instruction No. 6 did not present a prior theft conviction as basis for conviction; rather, it directed the jury to convict if it found that Vaughn had stolen items that had a value of $750 or more. *Appellant's App*. at 56-57. We cannot say that the jury's determination that Vaughn was guilty of Level 6 felony theft conviction was based on the existence of a prior theft conviction.

[25] Vaughn asks us to vacate his felony theft conviction and remand for resentencing. "When a conviction is reversed because of insufficient evidence, we may remand for the trial court to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense." *Chatham v. State*, 845 N.E.2d 203, 208 (Ind. Ct. App. 2006). The only element distinguishing Class A misdemeanor theft from Level 6 felony theft is, as is applicable here, the value of the property. Although we find that there was not sufficient evidence to support the $750 value element, we find that there was sufficient evidence presented for the jury to convict Vaughn of knowingly or intentionally exercising unauthorized control over Shores's property, with intent to deprive her of any part of its value or use. Therefore, we reverse

Vaughn's conviction for felony theft and remand to the trial court with instructions to vacate Vaughn's Level 6 felony theft conviction and enter judgment of conviction for Class A misdemeanor theft and for resentencing. We affirm Vaughn's Level 4 felony burglary conviction and habitual offender adjudication.

[26] Affirmed in part, reversed in part, and remanded with instructions.

[27] Riley, J., and Pyle, J., concur.